**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

AMINA HUSSAIN-DAY,

                 Plaintiff,

    v.

JESSE L. CRAIN, et al.,

                 Defendants.

CIVIL ACTION NO. 1:25-CV-00201

(MEHALCHICK, J.)

### MEMORANDUM

On January 22, 2025, Plaintiff Amina Hussain-Day ("Hussain-Day") initiated this action by filing a complaint. (Doc. 1). On April 23, 2025, Hussain-Day filed the operative third amended complaint. (Doc. 36) Presently before the Court are two motions to dismiss filed by Defendant Total Quality Logistics, LLC ("TQL") and Superstar Transport, LLC ("Superstar").[1] (Doc. 49; Doc. 58). For the following reasons, the Court will grant in part and deny in part TQL's motion to dismiss and will deny Superstar's motions to dismiss.

### I.    BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the third amended complaint and, for the purposes of the instant motions, is taken as true. (Doc. 36). Hussein-Day is the Administratrix of the Estate of Christopher Day. (Doc. 36, ¶ 1). On April 30, 2024, Christopher Day ("Day") was driving a motorcycle in York, Pennsylvania when a tractor trailer driven by Crain entered

---

[1] The Court notes that Defendants Jesse L. Crain ("Crain"), Kevin Richardson ("Richardson"), and Wooden Goose Trucking, LLC ("Wooden Goose") (collectively, "Wooden Goose Defendants") previously filed a motion to dismiss. (Doc. 42). However, after Wooden Goose Defendants filed the motion, Hussain-Day and Wooden Goose Defendants reached a settlement agreement which the Court approved on December 16, 2025. (Doc. 75, at 5; Doc. 76). Accordingly, Wooden Goose Defendants' motion to dismiss is **DENIED AS MOOT**. (Doc. 42).

Day's path and caused a crash ultimately resulting in Day's death. (Doc. 36, ¶ 18-20). Crain was under the influence of narcotics at the time of the accident. (Doc. 36, ¶ 19). Wooden Goose, Richardson, and Superstar all owned, maintained, and/or controlled the truck involved in the accident. (Doc. 36, ¶¶ 2-3, 6). Metro owned the trailer the truck was hauling at the time of the accident. (Doc. 36, ¶ 4). TQL either acted as a broker/carrier between Metro and/or Superstar or controlled and maintained the truck involved in the accident. (Doc. 36, ¶ 7). On April 23, 2025, Hussain-Day filed the operative third amended complaint alleging twenty-eight counts under Pennsylvania tort law. (Doc. 36).

## II.    LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors*, Inc., 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

III.    **DISCUSSION**

3

TQL avers that the Court should dismiss all claims against it because it is a broker under federal regulations, and Hussain-Day's claims against it are preempted by the Federal Aviation Administration Authorization Act ("FAAAA"). (Doc. 50, at 12-29). Superstar moves to dismiss all claims for punitive damages against it because Hussain-Day fails to allege specific conduct sufficiently egregious to warrant punitive damages. (Doc. 58, at 2-9). Superstar further posits that the Court should strike all allegations of recklessness and/or willful and wanton conduct in the third amended complaint because Hussain-Day fails to allege any facts supporting such allegations. (Doc. 58, at 1, 9). The Court will assess each argument in turn.

A. TQL'S STATUS AS A BROKER

TQL's preemption argument relies on its assertion that the Court may take judicial notice of its status as a freight broker. (Doc. 50, at 14-22). TQL avers that the Court must take judicial notice of its status as a freight broker and not a carrier because public records show that TQL is regulated as a broker. (Doc. 50, at 10-12). Hussain-Day avers that the Court cannot determine TQL's status as a broker or carrier at this point because she alleges that TQL acted as either a broker or a carrier and discovery is required to determine whether TQL was acting as a broker at the time of the accident. (Doc. 55-1, at 5-8).

While a court must ordinarily only consider allegations in the operative complaint when evaluating a Rule 12(b)(6) motion, there are certain "matters of which a court may take judicial notice." *Tellabs, Inc.*, 551 U.S. at 322. A court may take judicial notice of government documents that are part of the public record. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (noting that a district court could consider SEC filings attached to a motion to dismiss); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993)

(citations omitted) (noting that a court could consider "letter decisions of government agencies and published reports of administrative bodies" when evaluating a motion to dismiss). This includes online government documents. *See Clark v. Governor of New Jersey*, 53 F.4th 769, 774 (3d Cir. 2022) (taking judicial notice of state health documents found on a state website); *see also Furando v. Ortiz*, No. CV 20-3739, 2020 WL 1922357, at *1 (D.N.J. Apr. 21, 2020) (stating "[t]he Court may take judicial notice of public records and government documents on websites run by government agencies"). However, the Court taking judicial notice of a public record does not necessarily mean the Court must accept as true all factual contentions contained in the document. *See Hynoski v. Columbia Cnty. Redevelopment Auth.*, 941 F. Supp. 2d 547, 556 (M.D. Pa. 2013) (noting that although courts take judicial notice of judicial records, "[t]aking judicial notice of these documents does not mean that the court accepts as true all the contentions and allegations of the parties contained therein"); *see also Hall v. Johnson & Johnson*, No. CV 18-1833, 2019 WL 7207491, at *10 (D.N.J. Dec. 27, 2019) (taking judicial notice of regulatory documents but noting that the Court may not "rely on those documents to create a defense to the Complaint's otherwise well-pled allegations, and suggest that this Court should assume the factual assertions in those documents to be true").

TQL provides online Federal Motor Carrier Safety Administration ("FMCSA") filings which show that TQL is registered as a broker. (Doc. 50, at 10-12); Fed. Motor Carrier Safety Admin., *Company Snapshot Total Quality Logistics*, https://safer.fmcsa.dot.gov/query.asp?searchtype=ANY&query_type=queryCarrierSnapshot&query_param=USDOT&query_string=2223295 (last visited January 12, 2026). The Court can take judicial notice of these regulatory filings. *See Clark*, 53 F.4th at 774; *see also Furando*, 2020 WL 1922357, at *1. However, the fact that TQL is registered as a broker before

the FMCSA does not by itself mean that it should be considered a broker for purposes of the instant motion.

The FAAAA defines broker as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C.A. § 13102(2). A company registered as a broker may also be considered a carrier depending on its relationship to its customers. *See Ciotola v. Star Transportation & Trucking, LLC*, 481 F. Supp. 3d 375, 393 (M.D. Pa. 2020) (finding that even though a defendant "possessed a license and insurance to only act as a broker," there was a genuine dispute of material fact regarding whether the defendant was a broker or a carrier because "[s]ome of [the defendant's] activities take on characteristics of a motor carrier"); *see also Hartford Fire Ins. Co. v. Dynamic Worldwide Logistics, Inc.*, No. CV 17-553, 2017 WL 3868702, at *2 (stating "[w]hether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper").

Here, in the amended complaint, Hussain-Day alleges that TQL either acted as a carrier between Metro and/or Superstar or acted as a broker. (Doc. 36, ¶ 7). According to Hussain-Day, TQL's regulatory documents are insufficient to establish that TQL was acting as a broker in relation to Day's specific accident, and fact discovery is required to determine "the exact role Defendant TQL played in the nexus of transactions between the various parties involved in the interstate trucking which resulted in the incident which is the subject of this action." (Doc. 55-1). The Court finds this argument persuasive because although the Court takes judicial notice of TQL's online documents to the extent they show TQL is registered as

a broker, the Court cannot rely on the documents to accept as true that TQL was solely acting as a broker in relation to Day's accident where the third amended complaint alleges otherwise. *See Ciotola*, 481 F. Supp. 3d at 393 (noting that just because a company is only licensed as a broker does not it was only acting as a broker in relation to a car accident); *see also Hall*, 2019 WL 7207491, at \*10 (noting that taking judicial notice of a regulatory document does not mean that a court takes the factual assertions in the document as true and the allegations in the complaint as false). Accordingly, the Court cannot find at this early stage that TQL was acting as a broker at the time of Day's accident.

## B. FAAAA PREEMPTION

TQL avers that Hussain-Day's claims are preempted by the FAAAA and the safety exception to FAAAA preemption does not apply. (Doc. 50, at 14-29). Hussain-Day counters that whether her claims are preempted by the FAAAA turns on whether TQL is considered a broker or a carrier and thus, the Court cannot determine preemption prior to discovery. (Doc. 55-1, at 6-8).

Under the Supremacy Clause of the United States Constitution, federal law is "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. Where state law "conflicts with, or frustrates, federal law, the former must give way." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993). The defendant bears the burden of proving that any state law claims are preempted by federal law, and thus unenforceable under the Supremacy Clause. *See Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 130 (3d Cir. 2018) (stating "[p]reemption is an affirmative defense that the defendant has the burden to prove").

"In 1980, Congress deregulated trucking [under the] Motor Carrier Act of 1980." *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 368 (2008). Congress later expanded this deregulation with the FAAAA. *See Rowe*, 552 U.S. at 368; *see also Lee v. Golf Transportation, Inc.*, No. 3:21-CV-01948, 2023 WL 7329523, at *6 (M.D. Pa. Nov. 7, 2023). The FAAAA contains two nearly identical preemption provisions, one covering motor carriers and one covering freight forwarders and brokers, which provide:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.
>
> 49 U.S.C.A. § 14501 (a)(1), (b)(2); *see Rowe*, 552 U.S. at 368; *see also Lee*, 2023 WL 7329523, at *6.

The purpose of these provisions is to prevent a "patchwork of state service-determining laws, rules, and regulations." *Rowe*, 552 U.S. at 373. Where a state law is preempted, it is unenforceable unless it falls under an exception found at 49 U.S.C.A. § 14501 (a)(2). *See Lee*, 2023 WL 7329523, at *6. Under the FAAAA's preemption provision, "preempted state law must relate to prices, routes, or services 'with respect to the transportation of property.'" *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812, 819 (3d Cir. 2019). The Supreme Court has articulated four principles Courts should consider when evaluating FAAAA preemption defenses:

> (1) that [s]tate enforcement actions having a connection with, or reference to, carrier rates, routes, or services' are pre-empted (2) that such pre-emption may occur even if a state law's effect on rates, routes, or services is only indirect; (3) that, in respect to pre-emption, it makes no difference whether a state law is consistent or inconsistent with federal regulation, and (4) that pre-emption occurs at least where state laws have a significant impact related to Congress' deregulatory and pre-emption-related objectives.
>
> *Rowe*, 552 U.S. at 370–71 (citations and internal quotations omitted).

8

FAAAA preemption has a "broad scope" and "reaches laws that affect prices, routes, or services even if the effect 'is only indirect.'" *Bedoya*, 914 F.3d at 819 (citations omitted); *see also Lee*, 2023 WL 7329523, at *7. "However, where a law's impact on carrier prices, routes, or services is so indirect that the law affects them 'in only a tenuous, remote, or peripheral ... manner,' the law is not preempted." *Bedoya*, 914 F.3d at 819 (quoting *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013)). Rather, the law's indirect effect must have a "a significant impact on carrier rates, routes, or services." *Bedoya*, 914 F.3d at 819 (citations and internal quotations omitted); *see also Lee*, 2023 WL 7329523, at *10.

In *Bedoya v. American Eagle Express Inc.*, 914 F.3d 812, 819 (3d Cir. 2019), the Third Circuit articulated a two-step analysis to determine whether a law is preempted by the FAAAA. First, the Court must "determine whether the challenged state law has a direct impact on prices, routes or services." *Ciotola v. Star Transportation & Trucking, LLC*, 481 F. Supp. 3d 375, 386 (M.D. Pa. 2020); *see also Lee*, 2023 WL 7329523, at *9. "[T]o assess the directness of a law's effect on prices, routes, or services, courts should examine whether the law: (1) mentions a carrier's prices, routes, or services; (2) specifically targets carriers as opposed to all businesses; and (3) addresses the carrier-customer relationship rather than non-customer-carrier relationships (e.g., carrier-employee)." *Bedoya*, 914 F.3d at 823. The third factor of this inquiry focuses on whether "the regulation is geared towards 'resource inputs' (labor, capital, and technology) or 'product outputs' (services provided by the motor carrier industry)." *Ciotola*, 481 F. Supp. 3d at 386 (quoting *Bedoya*, 914 F.3d at 824); *see also Lee*, 2023 WL 7329523, at *9. The FAAAA regulates, and thus preempts, product outputs, rather than product inputs. *See Ciotola*, 481 F. Supp. 3d at 386; *see also Lee*, 2023 WL 7329523, at *9.

9

The second part of the *Bedoya* analysis examines "whether the challenged law's indirect impact on prices, routes, or services is significant or not." *Ciotola*, 481 F. Supp. 3d at 386; *see also Lee*, 2023 WL 7329523, at *9. "If the law has a significant impact on the services a motor carrier provides, then the law should be preempted by the FAAAA." *Ciotola*, 481 F. Supp. 3d at 386; *see also Lee*, 2023 WL 7329523, at *9. The Third Circuit has articulated four non-exhaustive factors to determine whether a law has a significant impact:

> (1) the law binds a carrier to provide or not provide a particular price, route, or service; (2) the carrier has various avenues to comply with the law; (3) the law creates a patchwork of regulation that erects barriers to entry, imposes tariffs, or restricts the goods a carrier is permitted to transport; and (4) the law existed in one of the jurisdictions Congress determined lacked laws that regulate intrastate prices, routes, or services and thus, by implication, is a law Congress found not to interfere with the FAAAA's deregulatory goal.

*Bedoya*, 914 F.3d at 823.

Courts are divided as to whether negligent hiring claims and other related negligence claims against brokers and carriers are preempted by the FAAAA. *Compare Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 457 (7th Cir. 2023) (finding that state negligent hiring claims are preempted by the FAAAA) and *Lee*, 2023 WL 7329523, at *13. (finding the same); *with Ciotola*, 481 F. Supp. 3d at 387 (finding that a negligent hiring claim was not preempted by the FAAAA). In *Ciotola v. Star Transportation & Trucking, LLC*, 481 F. Supp. 3d 375, 388 (M.D. Pa. 2020), the district court determined that negligent hiring claims were not preempted by the FAAAA because the court determined that common law negligence principles neither directly impact carrier services nor have a significant indirect impact. However, subsequent courts have contradicted this determination and found that negligent hiring claims and other negligence claims related to broker and carrier services have a direct and significant impact on broker and carrier services. *See Ye v. GlobalTranz Enters., Inc.*, 74 F.4th 453, 459 (7th Cir. 2023) (stating

10

"[t]he relationship is direct, and subjecting a broker's hiring decisions to a common-law negligence standard would have significant economic effects"); *see also Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1268 (11th Cir. 2023) (finding the "FAAAA expressly preempts [plaintiff's negligence] claims"); *see also Lee*, 2023 WL 7329523, at *13 (finding negligent hiring claims have direct and significant effects on broker and carrier services). The Court finds these latter cases more persuasive under the *Bedoya* standard.

First, the Court finds that negligent hiring and similar negligence claims, when applied against brokers and carriers, have "a direct effect on motor carriers' prices, routes, or services" because such claims relate to "product outputs." *Bedoya*, 914 F.3d at 821, 824; *see Lee*, 2023 WL 7329523, at *13. Specially, such claims regulate how a broker or carrier arranges transportation of goods across their routes. *See Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1024 (9th Cir. 2020) (citations omitted) (stating "because [plaintiff's] negligence claim seeks to interfere at the point at which [defendant] 'arrang[es] for' transportation by motor carrier, it is directly 'connect[ed] with' broker services"); *see also Lee*, 2023 WL 7329523, at *13 (finding that a negligent hiring claim had a direct impact because it "[sought] to enforce a duty of care related to how [defendant], the broker, arranges for a motor carrier to transport shipments, the service"). Further, such a direct impact is significant because it constitutes a regulation of a broker or carrier's services transporting property. *See Ye*, 74 F.4th at 460; *see also Lee*, 2023 WL 7329523, at *13 (finding that applying negligent hiring tort law to brokers would have a significant impact because it would require them "to perform additional services, such as hiring, retaining, and supervising a qualified driver in driving a commercial motor vehicle, which would in turn subject [the defendant] to a patchwork of laws throughout the county; impose compliance with new regulations; carry a substantial financial

11

consequence; and expose brokers to additional liability"). Accordingly, negligent hiring and general negligence claims are barred against brokers and carriers unless an exception to the FAAAA's preemption applies. *See Ye*, 74 F.4th at 459; *see also Aspen Am. Ins. Co.*, 65 F.4th at 1268; *see also Lee*, 2023 WL 7329523, at *13.

> The FAAAA has a safety exception that states:
>
> [The FAAAA's preemption provision] shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.
>
> 49 U.S.C.A. § 14501 (c) (2).

This provision appears in a subsection regulating "[m]otor *carriers* of property" of property, not brokers. 49 U.S.C.A. § 14501 (c) (emphasis added). Accordingly, courts have determined that while this exception may apply to tort claims against carriers, it does not apply to tort claims against brokers. *See Ye*, 74 F.4th at 461 (noting that the safety exception explicitly mentions carriers but not brokers); *see also Lee*, 2023 WL 7329523, at *14 (noting the same). This principle is supported by the provision's reference to motor carrier "insurance requirements." 49 U.S.C.A. § 14501(c)(2). The FAAAA provides a "liability insurance requirement" for carries which requires carriers to obtain "a bond, insurance policy, or other type of security" which "must be sufficient to pay, not more than the amount of the security, for each final judgment against the registrant for bodily injury to, or death of, an individual resulting from the negligent operation, maintenance, or use of motor vehicles." 49 U.S.C.A. § 13906 (a) (1). Because of this, under the safety exception, a "motor carrier may still be liable for negligence" but a broker may not. *Creagan v. Wal-Mart Transportation, LLC*, 354 F. Supp.

3d 808, 814 (N.D. Ohio 2018) (finding that a broker's negligent hiring claims were preempted by the FAAAA but a carrier's claims may not be because the FAAAA's motor carrier insurance requirement implies that a carrier may be liable for negligence); *see Ye*, 74 F.4th at 461 (noting that the safety exception cannot apply to negligence claims against brokers, in part, because the safety exception explicitly references carriers but not brokers); *see also Lee*, 2023 WL 7329523, at *14 (noting the same).

Here, Hussain-Day alleges various Pennsylvania negligent hiring and general negligence claims, along with wrongful death and survival claims related to her negligence claims, against TQL as both a carrier and a broker. (Doc. 36, ¶¶ 85-99). Hussain-Day also brings a claim explicitly labeled "broker liability." (Doc. 36, ¶¶ 107-13). The Court agrees that Hussain-Day's claims are preempted to the extent they allege TQL is liable as a broker because negligence claims against a broker have a direct and significant impact on motor carriers' prices, routes, or services. *See Ye*, 74 F.4th at 459; *see also Aspen Am. Ins. Co.*, 65 F.4th at 1268. However, the FAAAA's safety exception may allow Hussain-Day to raise negligence claims against TQL as a carrier and the FAAAA's carrier insurance requirements explicitly references the fact that carriers may be subject to common law negligence claims. *See* 49 U.S.C.A. § 14501(c)(2); *see also* 49 U.S.C.A. § 13906(a)(1); *see also Creagan*, 354 F. Supp. 3d at 814. For the reasons discussed *supra* Section III.A, the Court cannot determine at this early stage whether TQL acted as a broker or a carrier in relation to Day's accident. Accordingly, the Court **GRANTS** TQL's motion to the extent Hussain-Day alleges TQL acted as a broker. (Doc. 49). However, the Court **DENIES** TQL's motion to the extent Hussain-Day alleges TQL acted as a carrier **without prejudice** to TQL's ability to re-raise the issue of preemption after discovery. (Doc. 49).

C.  HUSSAIN-DAY'S CLAIMS FOR PUNITIVE DAMAGES

Hussain-Day alleges that she is entitled to punitive damages from Superstar because Superstar's negligence rises to the level of reckless and wanton conduct. (Doc. 36, ¶¶ 21-40, 41-55, 71-84). Superstar avers that Hussain-Day fails to set forth specific factual allegations of outrageous conduct sufficient to state a claim for punitive damages. (Doc. 58, at 6-9). Hussain-Day counters that her amended complaint sufficiently alleges that Crain acted recklessly by driving a tractor trailer under the influence of narcotics and Superstar acted recklessly by allowing Crain to operate a tractor trailer. (Doc. 63, at 8-11). According to Hussain-Day, such allegations of recklessness are sufficient to state a claim for punitive damages and it is premature to dismiss her claims for punitive damages prior to discovery. (Doc. 63, at 10-11).

Under Pennsylvania law, "punitive damages are appropriate for torts sounding in negligence when the conduct goes beyond mere negligence and into the realm of behavior which is willful, malicious or so careless as to indicate wanton disregard for the rights of the parties injured." *Hutchison ex rel. Hutchison v. Luddy*, 582 Pa. 114, 120 (2005). The plaintiff must allege "conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchison*, 582 Pa. at 121 (quoting Feld v. Merriam, 506 Pa. 383, 393 (1984)); *see Kozak v. Klikuszewski*, No. 4:21-CV-01609, 2022 WL 1177895, at *2 (M.D. Pa. Apr. 20, 2022). Punitive damages are only appropriate where "(1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchison*, 582 Pa. at 124; *see Kerlin v. Howard*, No. 4:18-CV-00481, 2018 WL 4051702, at *1 (M.D. Pa. Aug. 24, 2018). Courts generally deny motions to dismiss punitive damages because of the fact intensive nature of the inquiry. *See Dragone v. Pew,* 621 F. Supp. 3d 561, 567 (E.D. Pa.

14

2022) (stating "courts regularly deny motions to dismiss punitive damages claims in motor vehicle accident cases"); *see also Enari v. Davranov*, No. 3:24-CV-01101, 2024 WL 4729758, at *3 (M.D. Pa. Nov. 8, 2024) (stating the same); *see also Kerlin v. Howard*, No. 4:18-CV-00481, 2018 WL 4051702, at *2 (M.D. Pa. Aug. 24, 2018) (finding allegations that, "in a different posture, the Court would classify as 'vague' or 'conclusory'" are sufficient to state a claim for punitive damages prior to discovery).

Here, Hussain-Day alleges that Crain acted recklessly by driving a tractor trailer under the influence of narcotics, and Superstar acted recklessly by entrusting Crain with a tractor trailer. (Doc. 36, ¶¶ 19, 39, 54, 83). Such allegations are sufficient to sustain a claim for punitive damages given the fact intensive nature of the inquiry and the general reluctance amongst courts to dismiss claims for punitive damages prior to discovery. *See Dragone*, 621 F. Supp. 3d at 567; *see also Enari*, 2024 WL 4729758, at *3; *see also Kerlin*, 2018 WL 4051702, at *2. Accordingly, the Court **DENIES** Superstar's motion to dismiss. (Doc. 57).

## IV.    LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Here leave to amend is not warranted because Hussain-Day has already filed three separate complaints and thus had ample opportunity to rectify any deficiencies. *See Klein v. Autek Corp.*, 147 F. App'x 270, 278 (3d Cir. 2005) (nonprecedential) (affirming denial leave to amend

where a plaintiff had already "filed two complaints . . . [and] had ample time to prepare those complaints"); *see also Gorman v. Bail*, 947 F. Supp. 2d 509, 528 (E.D. Pa. 2013) (stating "[b]ecause Plaintiff has now filed three complains, the Court will assume that Plaintiff has plead the facts as best he can, and no further amendment will be allowed"). Accordingly, the Court **DENIES** leave to amend.

## V.    CONCLUSION

For the foregoing reasons, Wooden Goose Defendants' motion to dismiss is **DENIED as moot**. (Doc. 42). Superstar's motion to dismiss is **DENIED**. (Doc. 57). TQL's motion to dismiss is **GRANTED in part** and **DENIED in part**. (Doc. 49). TQL's motion is **GRANTED** regarding Hussain-Day's claims against TQL as a broker. (Doc. 36, ¶¶ 85-99, 107-13, 156-65). TQL's motion is **DENIED** as to Hussain-Day's claims against TQL as a carrier **without prejudice** to TQL's ability to re-raise the issue of preemption after discovery. (Doc. 36, ¶¶ 85-99, 156-65). Hussain-Day's broker liability claims are **DISMISSED with prejudice**. The Court **DENIES** leave to amend.

An appropriate Order follows.

**BY THE COURT:**

**Dated: February 25, 2026**          *s/ Karoline Mehalchick*
                                   **KAROLINE MEHALCHICK**
                                   **United States District Judge**